IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ZAFRES LAMONN MCDONALD, #2350095 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv507 |
| MAXEY CERLIANO, ET AL. | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Zafres Lamonn McDonald, a prisoner currently confined in the Willacy State Jail of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Sgt. Steven Stadt and Jailer B. Ernst[1]— correctional officers at the Gregg County Jail. The complaint was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

The present Report and Recommendation concerns Defendants Stadt and Ernst's motion for summary judgment (Dkt. #30). The court recommends that Defendants' motion for summary judgment (Dkt. #30) be granted.

<u>Plaintiff's Factual Allegations</u>

The original complaint was filed on September 15, 2020 (Dkt. #1). On September 17, 2020, the court ordered Plaintiff to file an amended complaint. (Dkt. #5). Plaintiff filed his amended

---

[1] Plaintiff identifies this Defendant as B. Earnest. Defendant's affidavit reflects that his proper name is Bryan Ernst. (Dkt. #30-5). The Court will use the same spelling of Defendant's surname as found in the affidavit.

complaint on October 26, 2020 (Dkt. #7). The amended complaint is the operative pleading in this cause.

Plaintiff's claims against Maxey Cerliano, Jeff Callaway, Luke Whitehead, Ben Reynolds, and Gary Robinson were dismissed on October 21, 2021. (Dkt. #27). Plaintiff's remaining claims are against Defendants Sgt. Steven Stadt and Jailer B. Ernst in their individual capacities pursuant to the Eighth Amendment. He alleges claims for excessive use of force, conditions of confinement, and due process.

Plaintiff specifically alleges that Defendants Stadt and Ernst used unnecessary and excessive force on him resulting in an injury and that he was placed in a separation cell that was covered in feces, for eight and a half (8 ½) hours. (Dkt. #7, p. 9). After being released from the cell that was covered in feces, he was placed in a different separation cell where he remained for eight (8) days, without a disciplinary case or a hearing. He asserts placing him in a separation cell under these circumstances violated his due process rights.

He states that on March 26, 2020, he requested toilet paper in the morning from Officer Ernst. *Id*. Plaintiff states that several hours later he still had not received toilet paper and requested it again. *Id*. Sergeant Stadt then came to his cell and asked Plaintiff to come with him. *Id*. Plaintiff claims that Sergeant Stadt kept telling Plaintiff that he had been disrespectful to his officers. On the way back to his cell, he stopped in front of Central Control with his arms crossed in front of him because he knew that there were cameras present in that area. Sergeant Stadt and Officer Ernst grabbed him and slammed him into the wall, causing injuries to his mouth, specifically "busting" his mouth. *Id*. Plaintiff states that he was then placed in handcuffs and taken to a separation cell that was covered in feces. *Id*. He complained about the cell, but that there was no redress until the officers changed shifts. *Id*. at 10. Plaintiff states that Officer Gray witnessed the condition of the cell and spoke to Corporal Berry, who

2

moved Plaintiff to a different cell. *Id.* Plaintiff is seeking $2,000,000 in compensatory damages and court costs.

<u>Defendants' Motion for Summary Judgment</u>

Defendants Stadt and Ernst filed a motion for summary judgment. (Dkt. #41). They argue Plaintiff failed to allege facts that support a meritorious claim of unnecessary or excessive use of force or conditions of confinement. They further assert that they are entitled to summary judgment based on qualified immunity. In support of their summary judgment motion, Defendants attached the following exhibits:

- Exhibit A          Affidavit of Jeff Callaway
- Exhibit B          Documents from Plaintiff's Jail File
- Exhibit A-2        Video of 03/26/2020 Incident
- Exhibit B          Affidavit of Steven Stadt
- Exhibit C          Affidavit of Bryan Ernst
- Exhibit D          Affidavit of Victoria Russell
- Exhibit E          Affidavit of Austin Kahil
- Exhibit F          Affidavit of Ashley Hensley

Defendants' arguments will be fully examined in the Discussion and Analysis section of this Report and Recommendation. Plaintiff did not file a response.

<u>Standard of Review</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to

all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle S. Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory

allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011).

"Because summary judgment is a final adjudication on the merits, courts must employ this device cautiously." *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991) (citation omitted). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

<u>Discussion and Analysis</u>

*A.  Excessive Use of Force*

Plaintiff alleges that he was the victim of an unnecessary and/or excessive use of force on March 26, 2020. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

On remand in *Hudson*, the Fifth Circuit concluded that the following factors are relevant in the inquiry whether there was an excessive use of force: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992); *see also Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). The Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *See, e.g., Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). On the other hand, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Id.* The parties appropriately addressed the five *Hudson* factors.

     1.  *Plaintiff's injuries*.

Plaintiff alleges that Defendants Stadt and Ernst pushed him into the wall; thus, "busting" his mouth. The only notation regarding the injury from the use of force appears in a medical request form dated the next afternoon, wherein Plaintiff claims his "lip was busted when I was cuffed and placed in Sep '16.' I have had no medical treatment." (Dkt. #30-2, p 15). Plaintiff was examined by medical. The medical entry on the medical request form states: "Assessed by Medical—no symptoms of infection noted—no serosanguinous fluid noted." (*Id.*). There is no indication that medical treatment was prescribed or required. (*Id.*). Plaintiff's Amended Complaint is silent as to whether he has suffered any long term or lasting injury for having his mouth or lip busted when it came into contact with the wall.

Plaintiff would bear the burden of proof and persuasion on this issue before a trier of fact. Plaintiff's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*,

37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (internal quotation marks and citations omitted). "[T]he nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451(5th Cir. 2002) (internal quotation marks and citations omitted). The Court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis removed).

The Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d at 924. There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). In *Siglar v. Hightower*, 112 F.3d 191, 194 (5th Cir. 1997), the Fifth Circuit held that a sore, bruised ear lasting for three days that resulted from an officer twisting the inmate's ear was *de minimis* and insufficient to provide a basis for a meritorious civil rights lawsuit. In *Gomez v. Chandler*, 163 F.3d at 924-25, the Fifth Circuit held that injuries consisting of pain and "cuts, scrapes, contusions to the face, head and body" that resulted from an inmate being knocked down, punched, and kicked, and that required medical treatment were more than *de minimis.* The Fifth Circuit also noted that even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Id.* at 924.

In *Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007), Lee's excessive force claim was based on his allegation that he suffered a "busted lip" that bled when an officer closed a portal door through which food is passed. Lee further described his lip injury as the kind that might be incurred in a basketball game, and he alleged that he suffered headaches as a result of his injury. Crediting Lee's

allegations as true under the summary judgment standard, the Fifth Circuit affirmed the dismissal of his excessive force claim because Lee's injury was *de minimis* in the context given that the officer's closing of the portal door was a reasonable attempt to maintain order in response to Lee's complaints. *See Hudson,* 503 U.S. at 6–7; *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001); *see also Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (pretrial detainee case).

Plaintiff has not shown that he has suffered a more than *de minimis* physical injury as a result of Defendants' actions, nor has he presented facts that show that the use of force was of the sort "repugnant to the conscience of mankind." This factor falls in favor of Defendants.

2.   *The need for the application of force.*

Plaintiff contends that it was unnecessary for Defendant Stadt and Ernst to grab him and slam him into the wall. (Dkt. #7. p. 9). Plaintiff asserts that he was not being threatening—as his arms were crossed in front of his body—and that Defendants' actions were unnecessary.

Defendant Stadt states that he had pulled Plaintiff from his cell to speak to him about his request to file charges on someone. He escorted Plaintiff to his office. He told Plaintiff that he was there to speak about the questions that Plaintiff had raised on the kiosk. Plaintiff insisted that he just wanted to speak to Lt. Tubb and appeared frustrated. Defendant Stadt terminated the conversation and told Plaintiff that he was going to be returned to his cell. (Dkt. #30-4, p. 2).

During the escort back to Plaintiff's cell, Plaintiff stopped in front of med cell 5 and stated that he was not going back to his cell until he spoke with Lt. Tubb. (*Id.*) Defendant Stadt states that he placed " soft hands" on Plaintiff and began to escort him back to his cell while also giving verbal commands to Plaintiff to walk back to his cell. Plaintiff pushed back and refused to walk. With the assistance of Defendant Ernst, Defendant Stadt guided Plaintiff onto the wall. (*Id.*). He further states that Plaintiff continued to resist by pushing off and suddenly began to comply stating, "Y'all cuffing

8

me for nothing!" Defendant Ernst applied the hand restraints and Plaintiff was escorted to Separation Cell 16 by both defendants. (*Id.*).

Defendant Ernst asserts he observed an agitated inmate being escorted by Defendant Stadt, who was instructing the inmate to return to his cell. (Dkt. #30-5, pp. 1-2). The inmate stopped walking and stated he wasn't going anywhere. Defendants placed the inmate on the wall and Defendant Ernst placed handcuffs on the inmate. (*Id.*).

The court reviewed a video of the incident (Dkt. #30-3), the sworn statements of Plaintiff and Defendants (Dkt. ##5, 30-1–8), and the other evidence in the record. Plaintiff's account of the use of force differs somewhat regarding his level of agitation from the defendants' accounts and from the actions depicted on the video.

The video shows that Plaintiff is inclined to move his hands and arms when he talks. Near the beginning of the video, Plaintiff is seen walking in front of Defendant Stadt. He turns abruptly and appears to extend his arm to point in Defendant Stadt's direction. Plaintiff is next seen making a concerted effort to control his hands and arms by placing them behind his back. The video shows Plaintiff walking and arguing with Defendant Stadt in an agitated manner. (Dkt. #30-3). He stops in the hallway with his arms in front of him. Defendant Ernst takes Plaintiff by the shoulder and with the assistance of Defendant Stadt turns Plaintiff quickly to face the wall. (*Id.*). Plaintiff's face does briefly touch the wall at one instance during the encounter, but his face was not pushed into the wall. His hands are pulled behind his back and he is handcuffed. Plaintiff is then escorted off camera. Plaintiff was never thrown to the ground nor was he pinned to the wall. (Dkt. #30-3).

Although this court reviews the summary judgment evidence in the light most favorable to the nonmoving party, greater weight is given "to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir. 2011). Thus, "[a] court of appeals

9

need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape." *Id.* (internal quotation marks and citation omitted).

The video suggests that Plaintiff was in an agitated state of mind. Defendants' affidavits indicate that they believed Plaintiff needed to calm down. Defendants were justified in restraining Plaintiff to calm him. Defendants placed Plaintiff on the wall as to deescalate the situation and prevent the need for additional force. Defendants used as much force as was necessary to restrain Plaintiff. Moreover, the medical assessment indicated that Plaintiff suffered no injury that required medical attention beyond that of first aid. Plaintiff's medical exam does not indicate that any significant injuries were noted.

The use of force against Plaintiff was justified, and the amount of force used was proportionate to the need to restrain him without injuring him. The record indicates that force was used in a good faith attempt to restore order and that there was no intent to harm Plaintiff. *Hudson,* 503 U.S. at 7.

To the extent that Plaintiff is asserting that he should not have been handcuffed, the Fifth Circuit has held that the use of handcuffs or other restraining devices constitute a rational security measure and cannot be considered cruel and unusual punishment unless great discomfort is occasioned deliberately as punishment or mindlessly, with indifference to the prisoner's humanity. *Jackson v. Cain*, 864 F.2d 1235, 1243-44 (5th Cir. 1989) (citing *Fulford v. King*, 692 F.2d 11, 14-15 (5th Cir. 1982)); *cf. Hope v. Pelzer*, 536 U.S. 730 (2002) (handcuffing inmates to the fence and cells for longs periods of time and forcing inmates to stand, sit, or lie on crates, stumps or otherwise for prolonged periods violated the Eighth Amendment). The Fifth Circuit noted "The use of shackles and handcuffs are restraints commonly used on inmates, even those of a preferred status." *Jackson,* 864 F.2d at 1244.

The facts as alleged do not rise to the level of cruel and unusual punishment. There is nothing to show that Plaintiff was deliberately treated maliciously and sadistically.

Based on the facts alleged by Plaintiff and taking the evidence in the light most favorable to him, Defendants have shown that there was a need for the application of force. This factor falls in favor of the Defendants.

   3.   *The relationship between the need and the amount of force used.*

The third *Hudson* factor is the relationship between the need and the amount of force used. Defendants argue that the amount of force used was proportionate to the need. Defendants claim that they were faced with an offender who was agitated and refusing to obey an order to return to his cell. To prevent escalation of the situation, Defendants placed Plaintiff on the wall, handcuffed him, and escorted him to a separation cell.

As to Plaintiff's complaint of being slammed or pushed against the wall, the video evidence does not support the contention that he was "slammed" against the wall. (Dkt. #30-3). Moreover, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9, citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (5th Cir. 1973), *overturned on other grounds by Graham v. Connor*, 490 U.S. 386 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The Fifth Circuit has ruled that placing handcuffs too tightly on a person, without more, does not amount to excessive force. *See Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005); *Glenn v.*

*City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Admissible evidence establishing some injury is required to satisfy the injury requirement of an excessive force claim based on the application of handcuffs. *See Tarver*, 410 F.3d at 752. Plaintiff does not allege that he was injured from being handcuffed.

Taking all evidence in the light most favorable to Plaintiff, Defendants have sufficiently explained the relationship between the need and the amount of the force used. This factor falls in favor of Defendants.

4. *The threat reasonably perceived by Defendants.*

The fourth *Hudson* factor concerns the threat reasonably perceived by the responsible officials. Defendants state they were faced with an offender who was agitated and refusing to obey an order to return to his cell. Defendants contend that they had no choice but to physically restrain Plaintiff against the wall, place him in handcuffs, and escort him to a separation cell to calm down. In light of the Fifth Circuit's holding in *Jackson v. Cain*, 864 F.2d at 1243-44, applying handcuffs to the Plaintiff ensures the safety and security of the officers and the security of the unit and is a rational security measure. This factor falls in favor of Defendants.

5. *Efforts made to temper the severity of a forceful response.*

The final *Hudson* factor concerns efforts made to temper the severity of a forceful response. Defendant Stadt contends that he instructed Plaintiff several times to return to his cell. He also asserts that he used "soft hands" to guide Plaintiff forward down the hall. Until Plaintiff stopped in the hallway and refused to return to his cell, Defendant Stadt was attempting to deescalate the situation and encourage Plaintiff to return voluntarily to his cell. The attempts are evidence that Defendants made efforts to temper the severity of their response to the situation. This factor also falls in favor of Defendants.

Having considered all five *Hudson* factors, the Court concludes that Defendants Stadt and Ernst have shown that no genuine issues of material facts remain and that they are entitled to summary judgment on the use of force claim

## B. Conditions of Confinement

Immediately after the use of force incident, Plaintiff asserts that he was placed in Separation Cell 16 that was "covered in human waste," and that the cell had been vacated by an inmate with mental issues who threw his feces. (Dkt. #7, p. 9). He contends that he pushed the intercom button and complained about the feces in the cell. He states that he was told to stay off of the button and that Defendant Ernst had been placed in Central Control. He claims that Defendant Ernst later came to the cell and said that if Plaintiff was not so disrespectful that he would not be in that cell. (*Id*. at 9-10). He further assets that when he complained about the feces, Defendant Ernst replied, "I know." Plaintiff states that he remained in Separation Cell 16 for eight and a half (8 ½) hours until shift change. At shift change, Plaintiff was removed from the cell.

Challenges to the sanitary conditions in a prison are considered challenges to the conditions of confinement. *Campos v. Webb Cnty. Sheriff's Dep't*, No. 5:12-CV-7, 2014 WL 1379668, at *5 (S.D. Tex. Apr. 3, 2014) (citing *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. *Hudson*, 503 U.S. at 8. The challenged condition must be "extreme." *Id.* at 9. While a prisoner "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health"

or safety. *Id.* at 35. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

Second, the prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the challenged condition. *Hudson*, 503 U.S. at 8. The proper standard is that of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305; rather, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834. While courts recognize that a lack of sanitary conditions may constitute a constitutional violation, a prisoner "must demonstrate a pervasive pattern of serious deficiencies in providing for [the prisoner's] basic human needs." *Duvall v. Dallas Cnty.*, 631 F.3d 203, 208 (5th Cir. 2011) (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)). Moreover, prisoners are entitled only to "reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron Cnty.*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)). Thus, an Eighth Amendment claim does not survive for sanitation conditions that may be less than ideal or not to the prisoner's liking, provided they are "reasonably sanitary." *See Johnson v. Texas Bd. Of Crim. Just.*, 281 F. App'x 319, 322, 2008 WL 2337324, 322 (5th Cir. 2008).

For a condition of confinement to provide the basis for liability under Section 1983, a prison official must know about and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. This requires satisfaction of both the objective and subjective elements. *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019). While prisons must meet an inmate's basic human needs, prisons are not required to conform to cleanliness standards of the non-incarcerated world. *See generally Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982), *modified in part*, 688 F.2d 266 (5th Cir. 1982) (private world expectations and standards may be helpful, but do not represent the

14

constitutionally required minimum); *cf., Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (constitutional violation found where death row inmates subjected to filthy cells with chipped, peeling paint, dried fecal matter and food encrusted on the walls, ceilings, and bars, as well as water from flooded toilets and rain leaks, all contributing to infestation of pests).

Specifically in order for Plaintiff to prevail on his conditions of confinement claim against the Defendants, he must show that the officers were aware of the feces in the cell and then failed to take any action to rectify the situation; along with showing that the feces represented an excessive risk to health or safety. In his amended complaint, Plaintiff does not allege that Defendant Stadt was aware of the feces in Separation Cell 16. In a fair reading of his amended complaint, Plaintiff was placed in the cell and the officers walked away. Plaintiff became aware of the feces on the floor and wall and pushed the intercom button to complain to the officer in Central Control—who happened to be Defendant Ernst. Plaintiff does not assert that he spoke to Sgt. Stadt after he was placed in the cell or at any time during the eight and a half hours that he remained in the cell. Plaintiff does not allege that Defendant Stadt was ever personally aware of the cell's condition. Furthermore, there is no evidence in the record suggesting Defendant Stadt was ever personally aware of the presence of feces in the cell accepting Plaintiff's allegations as true for the purposes of summary judgment. Based on the facts as alleged by Plaintiff, he has not shown that Defendant Stadt was aware of the feces and disregarded the conditions. As such, he has failed to establish a conditions of confinement claim against Defendant Stadt.

In contrast, Plaintiff does allege that he notified Defendant Ernst of the cell's condition by speaking with him through the intercom, and later when Defendant Ernst came to the cell and said: "I know" in response to Plaintiff's complaints regarding the presence of the feces. Plaintiff asserts that Defendant Ernst refused to take any action regarding the cell's condition and that he remained there

for 8 ½ hours until shift change. Plaintiff speculates that he was placed in Separation Cell 16 in hopes that he would get sick

It is well settled that "the Constitution does not mandate comfortable prisons," and that prison conditions may be "restrictive and even harsh" without running afoul of the Eighth Amendment. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[T]he Eighth Amendment protects prisoners from conditions of confinement that constitute threats to their health or safety, but not against those that cause mere discomfort or inconvenience. *Garcia v. Currie*, 674 F. App'x 432, 433 (5th Cir. 2017) (citing *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989)). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Although Plaintiff alleges, he was locked in the cell for 8 ½ hours before he was moved, there is nothing in the record that shows he was harmed by the presence of the feces. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986) (persons who claim a deprivation of constitutional rights are required to prove some violation of their personal rights). Plaintiff obviously found the presence of the feces disagreeable, but he fails to allege or show how he has been personally harmed by its presence. As a result, the court cannot conclude that Plaintiff has been denied the "minimal measure of life's civilized necessities" or that these conditions exposed Plaintiff to a substantial risk of serious harm to his health or safety. *See Rhodes*, 452 U.S. at 347 ("To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "[T]he deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measures of life's necessities." *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (internal quotation marks and citations omitted). "[E]xtreme deprivations are required" in order to meet the objective component when the claim involves conditions

imposed on the inmate. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (internal quotation marks and citations omitted).

In *Davis*, the inmate was placed in a management cell which was "just filthy," with "blood on the walls and excretion on the floor and a bread loaf on the floor." *Davis*, 157 F.3d at 1006. He was given cleaning supplies but kept in his cell for three days. *Id.* The district court dismissed the claim because the inmate did not allege an injury. On appeal, the Fifth Circuit held the district court did not abuse its discretion in dismissing the lawsuit because the inmate's allegations did not rise to an Eighth Amendment violation. The Fifth Circuit explained:

> Davis did not suffer an extreme deprivation of any "minimal measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). The Supreme Court has noted that "the length of confinement cannot be ignored .... A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978). Davis was confined in the management cell for only three days. *Cf. Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from an overflowed toilet in his cell).

*Id.* The *Davis* Court also relied on the case of *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995) (no Eighth Amendment injury when prisoner was given water and cleaning supplies but was denied a shower for three days after having human excrement thrown on him). *Id.* Despite Davis' claim that the conditions made him nauseous, the Fifth Circuit held that he had not "alleged the sort of 'deprivation of facilities for elementary sanitation' that we have observed gives rise to unconstitutional confinement." *Id.* (citing *Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983).

Considering that Plaintiff only spent 8 ½ hours in the cell without some resultant injury, Plaintiff cannot show that his claim rises to the level of a constitutional violation. Accordingly, Plaintiff's deliberate indifference claim against Defendant Stadt should be dismissed for failure to demonstrate that Defendant Stadt was aware and drew the inference regarding the condition of the cell. While Plaintiff has asserted sufficient facts to show that Defendant Ernst was aware and drew the

inference, Plaintiff failed to show that the 8 ½ hours he spent in the cell resulted in a denial of the minimal civilized measures of life's necessities. For these reasons, Defendants are entitled to summary judgment regarding Plaintiff's conditions of confinement claims.

C.    *Due Process*

Plaintiff contends that his placement in a separation cell for eight days violated his Fourteenth Amendment due process rights. Plaintiff asserts that he was denied due process by being placed in solitary confinement or a separation cell without being given a disciplinary case or a hearing. (Dkt. #7, p. 10). He states that he was housed in a separation cell or solitary confinement for eight (8) days as punishment because he "had a smart-ass mouth that was disrespectful." (*Id.*).

To maintain this due process challenge, Plaintiff must show that his placement and confinement in a separation cell for eight days deprived him of a cognizable liberty interest protected by the Fourteenth Amendment. *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (citing *Meachum v. Fano*, 427 U.S. 215, 223 (1976)). In general, a prisoner has no liberty interest in his custodial classification. *Id.* (citations omitted). The courts have repeatedly affirmed that "[p]rison officials should be accorded the widest possible deference" in classifying prisoners' custodial status as necessary "to maintain security and preserve internal order." *Id.* (citing *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.")). "Only when a prisoner demonstrates 'extraordinary circumstances' may he maintain a due process challenge to a change in his custodial classification." *Id.* The Supreme Court has stated that only those conditions which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" will implicate the protection of the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

18

Plaintiff does not have a liberty interest that is violated by his placement in a separation cell for eight days. *Tamez v. Buentello*, 80 F. App'x 933, 934 (2003) (citing *Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir. 1996)); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995) (holding that prisoner's placement in administrative segregation, due to allegedly false information in his file indicating that he was a member of a prison gang, did not constitute a deprivation of a constitutionally cognizable liberty interest). Generally speaking, due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incidents of prison life, or to those that extend the length or duration of confinement. *Sandin,* 515 U.S. at 484–86.

In the wake of *Sandin*, federal courts have repeatedly found that placement in solitary confinement, without more, **does not** constitute a deprivation of a constitutionally cognizable liberty interest. *See, e.g., Bonner v. Alford*, 594 F. App'x 266, 267 (5th Cir. 2015) (Mem.); *Pichardo*, 73 F.3d at 613; *Luken*, 71 F.3d at 193 ("*Sandin* establishes that Luken's administrative segregation, without more, does not constitute a deprivation of a constitutionally protected liberty interest."); *Al-Amin v. Donald*, 165 F. App'x 733, 738 (11th Cir. 2006) ("Confinement in administrative segregation, under conditions substantially similar to those experienced by the general population of the prison, does not implicate liberty interests...")

Here, Plaintiff's placement in solitary confinement or a separation cell for eight days is not a protected liberty interest. Placement in solitary confinement is an incident to ordinary life as a prisoner, and Plaintiff failed to allege or even demonstrate that his placement constitutes an atypical significant deprivation of his rights when considering the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484; *see also Dickerson v. Cain*, 241 F. App'x 193, 2007 WL 2033280 at *1 (5th Cir. 2007) ("Dickerson has not shown that his placement in Camp J extended lockdown presented an atypical or significant hardship beyond the ordinary incidents of prison life.").

In *Wilkinson v. Austin*, the Supreme Court found conditions at an Ohio "supermax" prison, when taken together, imposed an "atypical and significant hardship" so as to implicate a liberty interest under the due process clause. 545 U.S. 209, 223–24. The Court reached that finding when presented with the following conditions: (1) almost all human contact was prohibited, even to the point that the cells were constructed to prevent cell-to-cell communication; (2) opportunities for visitation were rare and in all events conducted only through glass walls; (3) cell lights remained on at all times; (4) placement in the facility was indefinite, and after an initial 30 day review, only reviewed annually; and (5) placement in the facility disqualified an otherwise eligible inmate for parole consideration. *Id.* at 214, 224. The Court concluded "[w]hile any one of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.* at 224.

In *Wilkerson v. Stalder*, the Fifth Circuit found that plaintiffs held in extended lockdown in Angola for approximately thirty years might have a due process claim. *Wilkerson*, 329 F.3d at 433, 436. The conditions of the inmates' confinement was described as

> the effective equivalent of solitary confinement. Prisoners in extended lockdown remain alone in a cell approximately 55 to 60 square feet in size of [sic] 23 hours each day. One hour each day, the prisoner may shower and walk along the tier on which his cell is located. Three times a week, weather permitting, the prisoner may use this hour to exercise alone in a fenced yard. Additional restrictions are placed on generally available inmate privileges including those pertaining to personal property, reading materials, access to legal resources, work, and contact visitation.

*Id.* at 433. The Court remanded the matter, in part, "to determine the appropriate baseline against which to measure the inmates' confinement in reviewing whether the inmates' confinement is 'atypical.'" *Id.* at 436.

Plaintiff expresses great dissatisfaction with his confinement in a separation cell but fails to allege what conditions there subjected him to atypical and significant hardship in relation to the

ordinary incidents of prison life. Placement in more restrictive housing for a short duration is hardly an atypical condition of prison life. Plaintiff's housing in a separation cell for eight days fails to show that he suffered an atypical or significant hardship beyond the ordinary incidents of prison life such that he was deprived of a cognizable liberty interest. *See Fisher v. Wilson*, 74 F. App'x. 301, 2003 WL 21654031, at *1 (5th Cir. July 14, 2003) ("Fisher's complaint failed to state a claim because Fisher has not shown how placement in extended lockdown presented an atypical or significant hardship"); *Bannister v. Deville*, 211 F.3d 593, 2000 WL 329244, at *1 (5th Cir. Mar. 20, 2000) ("[Bannister] merely complains that he was transferred to an extended lockdown facility where he was not entitled to the privileges enjoyed by the general population. Bannister's placement in [Camp–J] did not constitute a deprivation of a constitutionally cognizable liberty interest that entitled him to procedural due process during the disciplinary proceedings"). Plaintiff fails to allege facts that his due process rights have been violated. He has failed to state a claim upon which relief can be granted under the Fourteenth Amendment.

D.      *Qualified Immunity*.

        Defendants further argue that they are entitled to summary judgment based on qualified immunity. The defense of qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). "When

a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In order to rebut a defendant's qualified immunity defense in the context of an excessive use of force claim, a plaintiff must establish that (1) the official's allegedly wrongful conduct was the use of excessive force in violation of the Eighth Amendment and (2) genuine issues of material fact exist regarding the reasonableness of the official's conduct. *Mosley v. White*, 464 F. App'x 206, 211 (5th Cir. 2010). In the present case, Plaintiff has failed to show that his claims—for both the excessive use of force and the other claims—rise to the level of a constitutional violation establishing that Defendants Stadt or Defendant Ernst violated Plaintiff's constitutional rights. Defendants Stadt and Ernst are entitled to summary judgment based on qualified immunity.

<u>Recommendation</u>

It is therefore recommended that Defendants Stadt and Ernst's motion for summary judgment (Dkt. #30) be granted. It is recommended that Plaintiff's lawsuit be dismissed with prejudice. Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d at 1430 (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 8th day of August, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE